# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

JOHN GILBERT                                                                                              PLAINTIFF

VS.                                   CASE NO. 3:17CV00184 PSH

NANCY A. BERRYHILL, Acting Commissioner,
   Social Security Administration                                 DEFENDANT

# ORDER

Plaintiff John Gilbert ("Gilbert") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny his claim for Disability Insurance Benefits ("DIB"). Gilbert contends the Administrative Law Judge ("ALJ") erred: (1) by discrediting the opinion Dr. Barrett-Tuck ("Barrett-Tuck"), his treating neurosurgeon; and (2) erroneously assessing his residual functional capacity ("RFC"). The parties ably summarized the medical records and the testimony given at the administrative hearing conducted on March 14, 2016. (Tr. 31-65). The Court has carefully reviewed the record to determine whether there is substantial evidence to support Berryhill's decision. 42 U.S.C. § 405(g). The relevant period for this case is from May 20, 2013, Gilbert's alleged disability onset date, through May 6, 2016, when the ALJ issued his decision.[1]

*Administrative Hearing:* Gilbert, who was 50 years old at the time of the hearing, was 5'10" and weighed 215. His past work was as a resin mixer, a job performed at the heavy exertional level.

---

[1] The ALJ found Gilbert engaged in substantial gainful activity after the alleged onset date, during the last quarter of 2013. This activity did not bar Gilbert from seeking benefits from January 1, 2014, through May 6, 2016. (Tr. 19).

The ALJ cited Gilbert's "good work history." (Tr. 41). Gilbert stated he had a driver's license and drives, and could drive for an hour before needing a break due to tiring of his hands, poor grip, and hip pain. The hip pain, according to Gilbert, was from bursitis, which was diagnosed about two years before the hearing. Gilbert recounted he had major neck surgery (fusion and laminectomy) in June 2012, and again in September of that same year. He also had carpal tunnel syndrome ("CTS") release surgery on both hands in 2014. In 2015, Gilbert had surgery on his right elbow for a bone spur. Gilbert has an 11th grade education, and later earned his GED. Gilbert's biggest medical complaint was neck, shoulder, and right arm pain. (Gilbert testified he is right-handed.) According to Gilbert, the pain had been treated in the past by a Medrol Dose Pack and a steroid injection in his neck, and he continued to treat the pain with over-the-counter medications.[2] He stated he uses a CPAP for sleep apnea. He estimated he could lift 10 pounds, and stated he had no problems lifting his arms over his head.

On further questioning by his attorney, Gilbert indicated he had limited range of motion in his neck and cannot look up and down for long periods. He stated his "neck freezes up" if he looks down for 10 minutes. (Tr. 44). Gilbert stated he experienced "nearly daily" neck pain, which radiated to his right shoulder and arm, requiring him to frequently use his left hand. (Tr. 44). For example, he stated he grips cups and opens jars with his left hand. He retained the ability to do buttons and zippers with his right hand, and continued to write with his right hand, though not for long periods. In addition to over-the-counter medications, Gilbert said a neck pillow was useful. In Gilbert's opinion, the right side CTS release surgery was not successful, and he has daily right

---

[2] Gilbert testified he also took a prescription anti-inflammatory medication ("Diclofenac") which assisted in pain management. (Tr. 57-58).

hand pain.

Rating his own abilities, Gilbert stated he could sit for a couple of hours (1-2 hours in an office chair), stand for an hour, walk for 30-40 minutes, but could not use a computer and type because of his neck and hand. Gilbert said he had no sleep apnea problem, and his high blood pressure was controlled with medication, without any side effects. As for daily activities, Gilbert stated he does laundry, sweeps with his left hand, occasionally cooks simple meals, and grocery shops. Gilbert and his wife are members at a gym. He testified he no longer lifts free weights, but does use the weight machine in a sitting position, as well as walking on the treadmill. (Tr. 35-55).

William Elmore ("Elmore"), a vocational expert, testified Gilbert could not perform his past relevant work. The ALJ asked Elmore to assume a worker of Gilbert's age, education, and experience, who could perform light work with numerous restrictions.[3] Elmore testified that such a worker could perform jobs, including the jobs of sales attendant and office helper. The ALJ, in a second hypothetical question posed to Elmore, added the restrictions that the worker would work at the sedentary level. Elmore stated such a worker could perform the jobs of telemarketer and general office clerk. In his third hypothetical, the ALJ added that the worker would be unreliable for an eight hour workday. Elmore indicated there would be no jobs available for such a worker. (Tr. 58-62).

*The ALJ's Decision:* In his May 2016 opinion the ALJ determined Gilbert had the following severe impairments: cervical spondylosis, sleep apnea, status post-right elbow surgery, osteoarthritis of the joints, and CTS. The ALJ assessed Gilbert with the RFC to perform light work, except for

---

[3] The limitations were: occasional climbing, stooping, crouching, kneeling, and crawling; overhead reaching limited to one third of the work day; reaching and handling for two thirds of the work day; no constant, repetitive reaching and handling. (Tr. 59).

limitations that mirrored the first hypothetical question posed to Elmore, and listed in footnote three herein. Citing the relevant factors for assessing credibility, the ALJ found Gilbert's subjective allegations were "not entirely consistent" with the medical evidence. (Tr. 22). The ALJ specifically addressed the October 2015 opinion of Barrett-Tuck that Gilbert could perform no work; could do no bending, squatting, kneeling, or lifting of heavy objects; and could do no sitting and/or standing for longer periods beginning on May 9, 2012, and continuing through a date yet to be determined. The ALJ also considered the reports submitted by two state agency physicians, who found Gilbert capable of medium work with some restrictions. The ALJ assigned "little weight" to Barrett-Tuck's opinion, commenting that the medical evidence, as well as Gilbert's own testimony, did not support the open-ended opinion. (Tr. 23). Thus, the ALJ found Gilbert more capable than the opinion of Barrett-Tuck. Additionally, the ALJ assigned "little weight" to the state agency physicians' opinions because the ALJ found Gilbert less capable (light work rather than medium) than those doctors. Relying upon Elmore's testimony, the ALJ found Gilbert could perform the jobs of sales attendant and office helper. As a result, the ALJ determined Gilbert was not disabled during the relevant period. (Tr. 17-26).

**Error in Assigning Barrett-Tuck's Opinion Little Weight:** A treating physician's medical opinions are given controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence. *See Choate v. Barnhart*, 457 F.3d 865 (8th Cir. 2006). Barrett-Tuck, Gilbert's treating neurosurgeon, offered a mix of opinions. First, her opinion that Gilbert could do no work is not a medical opinion and is not entitled to special deference since such an opinion intrudes on the issues which the ALJ is to decide. *Ellis v. Barnhart*, 393 F.3d 988 (8th Cir. 2005). The remaining opinions offered by

4

Barrett-Tuck are medical opinions which are to be given controlling weight if well-supported and not inconsistent with other substantial evidence. In this instance, the medical opinions offered by Barrett-Tuck are at odds with numerous items in the record, and the ALJ's decision to assign little weight is well supported. As previously mentioned, Gilbert's own testimony runs counter to the opinions of Barrett-Tuck. As outlined herein, Gilbert described himself with some neck, shoulder, arm, and hand pain, but his view of his abilities far exceeded the view of Barrett-Tuck. Also, Barrett-Tuck's opinion dated Gilbert's limitations as beginning on May 9, 2012, and continuing until further evaluation. (Tr. 616). The dates of this opinion run counter to Gilbert's work history, which shows earnings for the twelve months after May 2012. (Tr. 208). In addition, Barrett-Tuck's treatment notes before October 2015 do not reflect such a limited view of Gilbert's abilities. Finally, the other medical evidence of record, including the notes of Dr. Mark Wendel, a physician who treated Gilbert for pain, are more in line with Gilbert's own testimony of some discomfort but retaining the ability to perform many functions. For example, Dr. Wendel noted Gilbert rated himself at 0 on a pain scale of 1 to 10 in November of 2013. (Tr. 296). In summary, Barrett-Tuck's October 2015 opinion was properly discounted because other assessments were supported by better or more thorough medical evidence. *Fentress v. Berryhill*, 854 F.3d 1016 (8th Cir. 2017). There is no merit to this claim for relief.

**Error in Determining RFC:** Gilbert faults the ALJ's RFC conclusion, arguing that it overstated his ability to handle, finger, and reach. Gilbert points to his testimony that he continued to have pain and numbness after his CTS release surgeries. He also points to a January 2016 notation from Dr. Swynn indicating problems with overhead activity.[4] In addition, he cites to a

---

[4] Dr. Swynn wrote, "As far as his right shoulder goes, he has pain with overhead activity, pain with

5

November 2015 treatment note from Baptist Onecare where he reported numbness in his right hand and his left pinky. (Tr. 800-802). The treatment note from that visit reflects that Gilbert also reported that he had chosen not to be seen by pain management personnel for several months, the pain was not severe, and that he was coping with over-the-counter medication. (Tr. 800).

There is no error in the RFC conclusion reached by the ALJ. The ALJ is not obligated to base his RFC opinion upon a claimant's subjective statements, nor is he obligated to build his RFC determination around the isolated treatment note of Dr. Swynn. Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Substantial evidence, including virtually all of the medical evidence and Gilbert's own testimony, supports the ALJ's RFC formulation.

In summary, we find the ultimate decision of Berryhill was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Gilbert's complaint is dismissed with prejudice.

---

any kind of benchpress activity." (Tr. 887).

IT IS SO ORDERED this 26th day of February, 2018.

_____
UNITED STATES MAGISTRATE JUDGE